IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEIDRE L. DENNIS, on behalf of herself and all others similarly situated, : : : Plaintiff, : : v. : : TRANS UNION, LLC : : Defendant. : | CIVIL ACTION<br><br>NO. 14-2865 |

MEMORANDUM

BUCKWALTER, S. J.                                                                                                                                 October 20, 2014

      Currently pending before the Court is the Motion by Defendant Trans Union, LLC ("Defendant") to Dismiss Count One of Plaintiff Deidre L. Dennis ("Plaintiff")'s Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Motion is denied.

I.     FACTUAL BACKGROUND

      Plaintiff is an adult individual who resides in Jersey City, New Jersey. (Compl. ¶ 2.) Defendant is a consumer reporting agency that regularly conducts business in Pennsylvania and which has a principal place of business located in Chester, Pennsylvania. (Id. ¶ 3.)

      For several years Defendant has obtained its public records information about bankruptcies, civil judgments, and tax liens from LexisNexis Risk & Information Analytics Group, Inc. ("LexisNexis"), First Advantage Corporation, a Symphony Technology Group Company ("First Advantage"), and/or other private business known as "vendors," which furnish such information to national Credit Reporting Agencies ("CRAs"). (Id. ¶ 6.) Plaintiff alleges

that Defendant has not retrieved actual public records from courthouses or actual government offices for several years.  (Id. ¶ 7.)  Even so, on Defendant's credit reports that it provides to consumers, and which it calls "personal credit reports," Defendant falsely still lists the names and addresses of courthouses or other government offices as the true "source" of its public records information.  (Id. ¶ 8.)  The public records information that Defendant receives from its vendors is not the actual court or taxing authority records, but rather is a distilled version of those records, which does not include all of the information available at the actual courthouses or government offices where the true records are housed.  (Id. ¶ 9.)  Defendant knows that both it and its public records vendors, such as LexisNexis and First Advantage, make mistakes in the distilled public records information that is acquired for purposes of credit reporting.  (Id. ¶ 10.)  Those distilled records frequently have numerical and other factual errors, do not contain the most updated status of the public records, invert the debtor and creditor, and are placed upon the wrong consumer's report.  (Id. ¶ 11.)  Plaintiff alleges that Defendant receives hundreds, if not thousands, of consumer disputes per month about public records items being misreported on personal credit reports.  (Id. ¶ 12.)

Plaintiff asserts that disclosure of the true source of a CRA's information is vital so that certain credit reporting errors that originate at the source can be corrected and so that consumers always know who is furnishing important credit information about them.  (Id. ¶14.)  Defendant, however, "never discloses to consumers the true source of the public records information that it collects and reports about them."  (Id. ¶ 15.)  Rather, "Defendant conceals that its sources for public record information are private vendors that supply to it only incomplete information, which can be inaccurate or not up to date."  (Id. ¶ 16.)  According to the Complaint, Defendant is more interested in maintaining the appearance that it receives actual public records from true

government sources, and in protecting its low-cost private sources of public record data, than in disclosing vital information to consumers.  (Id. ¶ 17.)

With respect to Plaintiff, Defendant disclosed in her personal credit report, prepared in Trans Union's Chester, Pennsylvania facility in or about August 2012, that she had a record of a state tax lien in the amount of $33,194.  (Id. ¶ 18.)  Although Defendant represented to Plaintiff that its source for this public record was the "Albany County Clerk" located at "32 N. Russell Road" in "Albany, NY," Defendant did not actually obtain any tax lien information about Plaintiff, or about any consumer, from "Albany County Clerk" in Albany, New York.  (Id. ¶¶ 19–20.)  Defendant had instead obtained that tax lien information about Plaintiff from one of its private "vendors."  (Id. ¶ 21.)  That information was "woefully deficient," however, because Plaintiff's old tax lien had been for $3,194, and not for $33,194 as Defendant had listed on Plaintiff's credit report.  (Id. ¶ 22.)  Moreover, official New York State Department of Taxation and Finance records reflect that the $3,194 tax lien was "satisfied" on July 30, 2009.  (Id. ¶ 23.)  In spite of this, Defendant's July and/or August 2012 report failed to indicate that the tax lien had been satisfied.  (Id. ¶ 24.)  Upon information and belief, the transcription error listing the $3,194 satisfied tax lien as an unsatisfied lien of $33,194 originated with Defendant's public records vendor, not with the State of New York taxing authorities.  (Id. ¶ 25.)  Pursuant to its systemic practice, however, Defendant failed to disclose to Plaintiff any information about its vendor, which was Defendant's true source of information regarding the tax lien at issue.  (Id. ¶ 26.)  During this time, Plaintiff was seeking to secure financing for a home loan, but the entry of a $33,194 unsatisfied tax lien appearing on her Trans Union credit report made that impossible.  (Id. ¶ 27.)

Plaintiff disputed the inaccurate tax lien with Defendant at its Chester, Pennsylvania dispute investigation center in or about July and/or August, 2012. (Id.) Defendant purportedly reinvestigated the tax lien and responded to Plaintiff in August 2012 that it had "verified" the accuracy of the $33,194 tax lien and that there would be "no change" to her credit report. (Id. ¶ 28.)

Plaintiff's mortgage lender advised her that the erroneous tax lien appearing on her Trans Union credit report was the "only condition stopping" Plaintiff from closing on her home loan." (Id. ¶ 29.) As part of her effort to correct this serious credit reporting error, Plaintiff contacted the New York Department of Taxation and Finance in or about July or August 2012, but was advised that official Albany County Clerk taxing records showed only that a $3,194 tax lien had been satisfied on July 30, 2009. (Id. ¶ 30.) Had Defendant truthfully disclosed to Plaintiff that the actual source of the $33,194 unsatisfied tax lien data was a private public records vendor, Plaintiff would have had the necessary information to try to correct the error directly with the vendor that had supplied Defendant with that erroneous information. (Id. ¶ 31.) Plaintiff would also have known the true source of the error and could have tried to stop it from being disseminated by that same vendor to other CRAs to which it also sells public records information. (Id. ¶ 32.) To this day, nowhere upon personal credit reports or file disclosures does Trans Union disclose the actual source of its public records information, and instead continues to misdirect consumers to courthouses and government offices with which Defendant has had no dealings in years. (Id. ¶ 34.)

The Complaint also contains allegations pertaining to a proposed class of plaintiffs as follows: all persons residing within the territorial limits of the United States Court of Appeals for the Third Circuit to whom, beginning two years prior to the filing of the Complaint and

4

continuing through resolution of the instant case, Defendant provided a credit file disclosure which included any civil judgment, tax lien, or bankruptcy ("the Class"). (Id. ¶ 37.) According to the Complaint, the Class is so numerous that joinder of all members is impracticable. (Id. ¶ 38.) While the precise number of Class members is known only to Defendant, Defendant sends tens of thousands of consumer file disclosures per year, and Defendant's uniform practice and procedure is to always omit the true source of its public records information from such disclosures, such that Plaintiff estimates the class size numbers in the thousands. (Id.) Questions of law and fact common to the Class allegedly predominate over any questions affecting only individual Class members, where the principal question is whether Defendant violated the FCRA by misrepresenting the true source of its public records information from its consumer file disclosures. (Id. ¶ 39.)

      Plaintiff initiated the present litigation on May 20, 2014, setting forth three causes of action: (1) Defendant's failure to accurately and completely disclose the true source of its public records information about Plaintiff in her consumer file disclosure in violation of 15 U.S.C. § 1681(g) and pursuant to 15 U.S.C. §§ 1681n and 1681o (Class Claim); (2) Defendant's failure to maintain reasonable procedures to ensure maximum possible accuracy of the report it prepared about Plaintiff, in violation of 15 U.S.C. § 1681e(b) and pursuant to 15 U.S.C. §§ 1681n and 1681o; and (3) Defendant's failure to conduct a reasonable reinvestigation after receiving Plaintiff's notice of dispute, in violation of 15 U.S.C. § 1681i(a)(1)(A) and pursuant to 15 U.S.C. §§ 1681n and 1681o. (Id. ¶¶ 45–52.) The essence of these claims is that Defendant systematically misrepresents to consumers the source of the public record information—such as civil judgments, tax liens, and bankruptcies—that it places on their consumer reports, depriving consumers of valuable congressionally-mandated information and making it more difficult for

consumers to correct errors relating to those public records, which are caused by Defendant and/or its private vendor sources, rather than by any courthouse or other government body that Defendant misidentifies as its source for that information.  (Id. ¶ 1.)  Defendant filed a Motion to Dismiss Count One of Plaintiff's Class Action Complaint on July 25, 2014.[1]  Plaintiff responded on August 25, 2014.  Defendant submitted a Reply on September 8, 2014.  Plaintiff submitted its Sur-Reply on September 10, 2014.  Defendant submitted its Response to Plaintiff's Sur-Reply on September 11, 2014.  The Motion to Dismiss is now ripe for judicial consideration.

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.  Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

---

[1] Defendant notes that it also disputes the individual claims presented in Counts Two and Three of Plaintiff's Complaint and that it intends to file its answer with respect to those claims following resolution of its Motion to Dismiss Count One.  (Def.'s Mem. Supp. Mot. Dismiss 3.)

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

### III. DISCUSSION

The FCRA was enacted to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the

7

confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b); see also Philbin v. Trans Union Corp., 101 F.3d 957, 962 (3d Cir. 1996) (quoting 15 U.S.C. § 1681(b)). If an agency is negligent in failing to adhere to the requirements of the FCRA, the statute provides for civil liability in the form of actual damages, costs and attorney's fees. 15 U.S.C. § 1681o. Furthermore, if an agency willfully fails to comply with the FCRA, the Act also imposes liability for statutory and potentially for punitive damages. See 15 U.S.C. § 1681n.

Defendant moves to dismiss Count One of Plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant sets forth two grounds for dismissal of Count One: (1) Defendant satisfied its disclosure obligations based on its proposed meaning of the word "sources" as used in Section 1681g(a)(2); and (2) Plaintiff cannot show that any alleged violation of that section was willful. Having considered the Complaint and the parties' briefs, the Court finds that Plaintiff has sufficiently alleged a violation of FCRA Section 1681g(a)(2) such that the requirements of Rule 12(b)(6) are satisfied. Accordingly, the Court will deny Defendant's Motion to Dismiss Count One of Plaintiff's Complaint.

    A. **The Meaning of "Sources" in Section 1681g(a)(2)**

The Court first addresses Defendant's argument that Plaintiff failed to state a claim in Count One of the Complaint "because TransUnion has properly disclosed the sources of the public record information included in Plaintiff's credit file, as set forth in Section 1681g(a)(2) of the Fair Credit Reporting Act [ ]." (Def.'s Mot. Dismiss 1–2.)

Count One of Plaintiff's Complaint alleges that Defendant is liable to Plaintiff for failure to accurately and completely disclose the true source of its public records information about her

in her consumer file disclosure, in violation of 15 U.S.C. § 1681g(a)(2). (Compl. ¶ 48.) Section 1681g of the FCRA provides that:

> (a) Information on file; sources; report recipients
> Every consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, **clearly and accurately disclose to the consumer**:
> (1) **All information in the consumer's file at the time of the request**, except that--
> (A) if the consumer to whom the file relates requests that the first 5 digits of the social security number (or similar identification number) of the consumer not be included in the disclosure and the consumer reporting agency has received appropriate proof of the identity of the requester, the consumer reporting agency shall so truncate such number in such disclosure; and
> (B) nothing in this paragraph shall be construed to require a consumer reporting agency to disclose to a consumer any information concerning credit scores or any other risk scores or predictors relating to the consumer.
> (2) **The sources of the information**; except that the sources of information acquired solely for use in preparing an investigative consumer report and actually used for no other purpose need not be disclosed: Provided, that in the event an action is brought under this subchapter, such sources shall be available to the plaintiff under appropriate discovery procedures in the court in which the action is brought.

15 U.S.C.A. § 1681g (emphasis added).

Defendant argues that it properly disclosed the Albany County Clerk as the source of the tax lien information in Plaintiff's credit file, and that it "complied with its duty under Section 1681g(a)(2) to disclose to Plaintiff the sources of information regarding her tax lien by identifying only the Albany County Clerk." (Def.'s Mem. Supp. Mot. Dismiss 5.) Defendant argues further that "[t]hose who retrieve data for TransUnion are not sources of credit data, as contemplated by Section 1682g(a)(2) [because] [t]hese intermediaries do not originate, generate or maintain tax lien records, and accordingly they are not 'sources' of these records." (Id.) Plaintiff responds that case law, including binding Third Circuit precedent, "makes clear that

CRAs must disclose to consumers all information maintained about the requesting consumer including the sources of that information." (Pl.'s Resp. Opp'n Mot. Dismiss 11.) Plaintiff argues that she clearly pled that Defendant does not disclose to her, or to other consumers as a matter of practice, "the actual sources from which it obtains the public record information that it collects and reports about them," and that she has therefore pled a cognizable claim under section 1681g(a)(2). (Id. at 12.) Because the FCRA does not define "sources," statutory interpretation is required.

### 1. The Meaning of "Sources"

Defendant urges the application of the "ordinary meaning" of "source," which according to Defendant is "the originator or primary agent of an act, circumstance or result" or "spring, fountain, head, origin, original, first or primary cause, the first producer, the originator."[2] (Def.'s

---

[2] Defendant argues that it is not relevant for purposes of statutory interpretation that Section 1681g(a)(2) uses the word "sources" rather than "source" because according to the Dictionary Act "words importing the plural include the singular." (Def.'s Mem. Supp. Mot. Dismiss 8 (quoting 1 U.S.C. § 1).) According to Defendant, because "source" refers to a place of origin, "neither a conduit nor an intermediary is a source at all, and thus need not be disclosed" and, therefore, "the statute's use of the plural form of the word does not make a non-source into a source." (Id. at 8–9.) Defendant asserts that because "information" is a "mass noun" that has no plural form, "sources" must be read "to contemplate the need to identify the sources of the multiple items of information in a report" and "does not suggest that each particular item of information derives from multiple sources, only that the overall mass of information in a credit file usually will." (Id. at 9 (internal citation omitted).)
  Plaintiff argues that while Congress could have chosen to draft Section 1681g(a)(2) to mandate the disclosure of "origins" or "the single original source" of a CRA's information, it did not do so, and therefore the statutory language requiring disclosure of a CRA's "'sources' (which can be singular for one source or plural for multiple sources) of information" contemplates the possibility of more than one source for a single piece of information. (Pl.'s Resp. Opp'n Mot. Dismiss 13.)
  Within the Third Circuit, a court undertaking to determine the correct reading of statutory language must "strive to avoid a result that would render statutory language superfluous, meaningless, or irrelevant." Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997) (internal citations omitted). Congress included the plural form of "source" in Section 1681g(a)(2). Accordingly, and in the absence of any limitations in the text, that section can be read as both contemplating multiple sources for a single piece of information and/or the group of sources for multiple pieces of information in a credit file.

Mem. Supp. Mot. Dismiss 5 (citing Black's Law Dictionary at 1429 (8th ed. 2003) and Williams v. Snyder, 3 Pa. D.& C. 341, 342 (Penn. Ct. Com. Pl. 1923)).)  Defendant argues that the modern and historical context of the word "source," as it relates to the origin or fountain-head of a river, means that there can only be one source under the FCRA because "[o]nly the origin of the data must be disclosed as the source, not how it is drawn from the well." (Id. at 6–7 (citations omitted).)  Defendant argues that "[t]he purpose of the disclosure requirement is satisfied by disclosing the ultimate origin of the data because, when reinvestigating public records data, consumer reporting agencies typically verify by reference to what information the government makes available." (Id. at 8.)  According to Defendant, "the only source potentially relevant to a reinvestigation of data is the Albany County Clerk itself, the ultimate custodian of Plaintiff's tax lien information," and "[d]isclosure of the Albany County Clerk as the source likewise provides Plaintiff with the benefit of transparency such that she is informed where the information originated." (Id.)  Thus, "[b]y disclosing the Albany County Clerk as the source of the tax lien data at issue here, TransUnion fully satisfied its duty under Section 1681g(a)(2)." (Id.)  Defendant disagrees with Plaintiff's proposed understanding of "sources" and urges that the term "sources" as used in the FCRA "necessarily excludes intermediaries and conduits through which data may flow on its way to a consumer reporting agency's file." (Id. at 5.)

     Plaintiff submits that the meaning for "source" in Section 1681g(a)(2) is "any thing or place from which something comes, arises, or is obtained," or "a person, book, etc., that gives information." (Pl.'s Resp. Opp'n Mot. Dismiss 12 (internal citations omitted).)  According to Plaintiff, a definition for "source" that refers to the person, place, or thing from which information is obtained is "consistent with the FCRA, which deals with the dissemination of information (rather than water, as suggested by Defendant's overly-narrow proposed definition),

11

and which has consistently been construed to encourage the truthful and complete disclosure of information to consumers, including from where such information was obtained." (Id.)

As a preliminary matter, the Third Circuit has "noted as to FCRA in particular that:

> 'The breadth and scope . . . is both evident and extraordinary . . . . Moreover, it is undeniably a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it . . . . It is imperative that we do not allow a company that traffics in the reputations of ordinary people a free pass to ignore the requirements of the FCRA each time it creatively incorporates a new piece of personal consumer information in its reports."

Seamans v. Temple Univ., 744 F.3d 853, 868 (3d Cir. 2014) (quoting Cortez v. Trans Union, LLC, 617 F.3d 688, 721–23 (3d Cir. 2010)). A liberal reading of Section 1681g(a)(2) allows for a definition of "sources" like that suggested by Plaintiff, which does not limit Defendant's, nor any CRA's, "sources" to only the original source of information. Defendant's proposed definition, and its reading of "sources" as excluding the possibility of multiple sources for one piece of information, are too narrow in light of the "remedial scheme" Congress intended and the fact that Congress wrote Section 1681g(a)(2) using the plural "sources" rather than the singular "source."[3]  Cf. Cortez, 617 F.3d at 710 ("Congress surely did not intentionally weave an exception into the fabric of the FCRA that would destroy its remedial scheme by allowing a credit reporting agency to escape responsibility for its carelessness whenever misleading information finds its way into a credit report through the agency of a third party.") As the plain

---

[3] Defendant expresses concern that Plaintiff's proposed understanding of "sources" would mean that, under Defendant's former procedure of actually sending its own employees to public records facilities, the employee who retrieved the records would be a "source" "merely by serving as the courier of the public records information," and that "the individual responsible for recording that information in TransUnion's internal systems" would also be a "source." (Def.'s Reply 2.) Plaintiff's proposed definition for "sources" is not so broad as Defendant fears—it contemplates disclosure of the entity or entities which are sources of information for a CRA, not the identity of every individual involved in Defendant's data retrieval and entry.

language of Section 1681g(a)(2) does not limit "sources" in any way, the Court will not impose a limitation on the number of sources a CRA could have, and therefore be required to disclose, for a particular piece of information.

### 2. Case Law Interpreting "Sources"

While there is a dearth of cases interpreting the meaning of "sources" as used in Section 1681g(a)(2), one case which has considered the issue is instructive.[4] In Dreher v. Experian Information Solutions, Inc., the court focused its discussion on the meaning of "sources" in Section 1681g(a)(2) in the context of a dispute where Experian consistently cited one entity "as the sole source of the information" appearing on the plaintiff's credit report, but where "the main, if not exclusive, supplier of the disputed information was another entity" which was not disclosed to the plaintiff. Dreher, No. Civ.A.11-0624, 2013 WL 2389878, at *1 (E.D. Va. May 30, 2013).[5] The court denied the defendant's motion for partial summary judgment because the

---

[4] Defendant notes that there is a lack of binding precedent within this Circuit regarding the meaning of "sources" in Section 1681g(a)(2). Even so, numerous courts within this Circuit have read other sections of the FCRA with an understanding that there can be more than one source for a single piece of information, including the original source of information or the source the CRA actually used, original or not. See, e.g., Cushman, 115 F.3d at 225 (observing that the "grave responsibility" imposed by FCRA section concerning reinvestigation "must consist of something more than merely parroting information received from other sources."); Shannon v. Equifax Info. Servs., LLC, 764 F. Supp. 2d 714, 724 (E.D. Pa. 2011) (discussing factors set forth by the Third Circuit in Cushman for when a CRA should go beyond the original source during a reinvestigation, including when the CRA knows or should know that the source is unreliable); Dixon-Rollins v. Experian Info. Solutions, Inc., 753 F. Supp. 2d 452, 458, 465 (E.D. Pa. 2010) (discussing a CRA's obligation as including going beyond "the original source" in order to verify the accuracy of "its original source" or "its initial source" in case concerning reinvestigation requirements under FCRA). By using adjectives like "original" and "initial" and by referring to a defendant's sources as "its source" as opposed to "the source," courts within the Third Circuit have demonstrated an understanding that the meaning of "sources" is not as narrow as Defendant proposes.

[5] Defendant correctly points out that Dreher is not binding on this Court. The Dreher court's reasoning, however, is illustrative regarding the meaning of "sources" within the context of the FCRA and specifically with regard to Section 1681g(a)(2). The Dreher court's analysis is particularly useful because it relied heavily on a Third Circuit opinion in discussing whether a

undisclosed entity "is clearly one of the 'sources' of Experian's information, [and] a jury could find that Experian's disclosure was objectively unreasonable." Id. The record showed that the defendant had listed one entity "exclusively" and "as the sole source of the negative information, even though the entity with whom Experian actually communicated throughout [the relevant time period]" was the undisclosed entity. Id. at *2. The court reasoned that "[w]hatever else it might mean, the term 'sources of the information' certainly includes the entity that gave the information to Experian." Id. at *5.[6]

In this case, Plaintiff has alleged that the erroneous information about her tax lien which appeared on her credit report—the incorrect amount and the inaccurate status of the debt—came from the third party that Defendant utilized to obtain public records information, and not from the Albany County Clerk. While the "ultimate origin of the data," in Defendant's words, is the Albany County Clerk, Defendant's source for the line of information that actually appeared on Plaintiff's credit report was the undisclosed third party. Assuming the allegations in the Complaint are true for purposes of this Motion to Dismiss, Defendant's actual source of the tax lien information was a third party whose identity was not disclosed to Plaintiff when she made

---

jury could find that the defendant in that case committed a willful violation of the FCRA because of its allegedly reckless conduct. See Dreher, 2013 WL 2389878 at *4–8 (citing and discussing Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241 (3d Cir. 2012)).

Defendant also argues that Dreher's interpretation of "sources" is not applicable because that case was decided subsequent to the events described in Plaintiff's Complaint and thus does not constitute clearly-established authority. As discussed below, however, in the Third Circuit the absence of clearly-established authority does not give a defendant a "free pass" on liability under the FCRA. See Cortez, 617 F.3d at 721.

[6] Defendant further argues that Dreher is not relevant because the dispute in that case "focused upon disclosure of a successor owner of the credit information at issue, which is distinctly different from a conduit of information, who merely collects the data from its owner." (Def.'s Mem. Supp. Mot. Dismiss 11 (emphasis in original).) Defendant's argument is misplaced, however, because it is not whether an entity is the owner of information, versus a collector of information that is then passed on to CRA, that determines its status as a "source," but rather whether that entity is the one which actually provided credit information to a CRA, and is, therefore, a source of information for that CRA.

14

her request. Such failure to disclose that source to Plaintiff upon her request could constitute a violation of Section 1681g(a)(2) and, accordingly, Plaintiff has adequately stated a claim for a relief on that basis.

### B. <u>Willfulness Requirement</u>

Defendant's second ground for dismissal concerns the requirement that a plaintiff show that an FCRA violation was willful. Defendant, relying on <u>Safeco Insurance Company of America v. Burr</u>, 551 U.S. 47 (2007) and <u>Fuges v. Southwest Financial Services, Ltd.</u>, 707 F.3d 241 (3d Cir. 2012), argues that Plaintiff failed to state a claim in Count One of the Complaint because "her allegations relating to how TransUnion discloses the sources of data fail to establish that TransUnion's actions were inconsistent with all objectively reasonable interpretations of Section 1681g(a)(2), and therefore Plaintiff fails to sufficiently plead a willful violation of the FCRA."[7] (Def.'s Mot. Dismiss 2.)

To show willful noncompliance with the FCRA, a plaintiff must prove that the defendants "knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive." <u>Cushman</u>, 115 F.3d at 226 (quoting <u>Philbin</u>, 101 F.3d at 970). "A company cannot be said to have willfully violated FCRA if the company acted on a reasonable interpretation of FCRA's coverage." <u>Fuges</u>, 707 F.3d at 248. "'A dearth of authoritative guidance' makes it less likely that a party's conduct was objectively unreasonable, but the absence of such authority does not 'immunize' an actor from potential

---

[7] Defendant also argues that: (1) the award of statutory damages for this claim, on an individual or class basis, would violate its Due Process rights; (2) an adoption of Plaintiff's understanding of "sources" would "impose an impermissible burden on protected First Amendment Activity— the distribution of information contained with government records;" and (3) because an appellate court or government agency has not interpreted Section 1681g(a)(2), "the first word from the legal system on a reasonable question of statutory interpretation cannot be a class action seeking to impose the 'crushing liability' of enormous statutory and punitive damages." (Def.'s Reply 6– 8 (citations omitted).) At the motion to dismiss stage, and prior to actual certification of a purported class, these arguments are premature.

liability where the statue is 'far too clear' to support the actor's interpretation." Id. (citing Cortez v. Trans Union, LLC, 617 F.3d 688, 721–22 (3d Cir. 2010)). An actor's "objectively unreasonable actions with respect to a particular consumer's account can support a jury finding of willfulness. Blanket policies, too, can underpin such a finding." Seamans, 744 F.3d at 868 (internal citations omitted). The United States Supreme Court has clarified that reckless disregard of FCRA requirements also qualifies as a willful violation within the meaning of Section 1681n(a). See Safeco 551 U.S. at 71. "In determining whether an actor's conduct was reckless, a court should examine the text of the statute, case law that existed at the time of the alleged violation, and any agency interpretations." Seamans, 744 F.3d at 868 (citing Safeco, 551 U.S. at 69–70). Ultimately, whether an act was done with knowing or reckless disregard for another's rights remains a fact-intensive question. Whitfield v. Radian Guar., Inc., 501 F.3d 262, 271 (3d Cir. 2007), vacated as moot, 128 S. Ct. 2901 (2008); Manno v. Am. Gen. Fin. Co., 439 F. Supp. 2d 418, 430 (E.D. Pa. 2006) (noting that whether an act was done with knowing or reckless disregard for another's rights is a fact-intensive question.) Typically, willfulness "is a factual issue, not a question of law, [which] therefore cannot be decided either on appeal or by the District Court as a matter of law." Whitfield, 501 F.3d at 271.

First, with respect to the statutory text, the plain language of Section 1681g(a)(2) refers to "sources" and not a single source. As "the breadth and scope of the FCRA is both evident and extraordinary," and "is undeniably a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it," it is possible that Defendant "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Cortez, 617 F.3d at 721–22; Safeco, 551 U.S. at 69. Second, Plaintiff is not obligated at the motion to dismiss phase to prove that Defendant's omission of the third party entity as a

"source" was based on a reading of the FCRA that was either knowingly erroneous or was objectively unreasonable and therefore reckless. Rather, at this phase Plaintiff need only allege facts that plausibly support her allegation that Defendant's decision to exclude that information could, under the FCRA's plain language, be an objectively unreasonable interpretation such that Defendant willfully violated Section 1681g(a)(2).[8] See, e.g., Korman v. Walking Co., 503 F. Supp. 2d 755, 761 (E.D. Pa. 2007) ("Defendant's imploration of the Court to determine whether Defendant's interpretation was 'reasonable' is inappropriate here: at the motion to dismiss stage, the Court's only role is to determine whether the complaint is sufficient."). Defendant argues that "Plaintiff has not pled and cannot plead that to disclose only the origin of the data, rather than the intermediary who retrieved it from the data's original owner, is inconsistent with all objective reasonable interpretations of Section 1681g(a)(2)." (Def.'s Mem. Supp. Mot. Dismiss 16.) As succinctly stated in Korman, however, the Court need only determine whether Plaintiff's Complaint is sufficient, and not whether Plaintiff will succeed at the summary judgment phase or at trial. Third, as discussed above, some Third Circuit precedent exists to support a potential finding that Defendant's interpretation of "sources" was too narrow with respect to its disclosure obligations. Moreover, the absence of direct precedent is not the end of the matter, because according to the Third Circuit "the lack of definitive authority does not, as a matter of law, immunize [a defendant] from potential liability." Cortez, 617 F.3d at 721 (noting that the absence of federal appellate precedent "merely establishes that the issue has not been presented to a court of appeals before [and that] [t]he credit agency whose conduct is first examined under

---

[8] As stated previously, a finding of willfulness can be supported by knowing or reckless conduct. At the motion to dismiss stage, and without the benefit of discovery, Plaintiff is not expected to be able to demonstrate that Defendant acted knowingly in allegedly violating Section 1681g(a)(2). As with recklessness, Plaintiff need only allege facts which allow the Court to infer the plausibility of her claim that Defendant willfully violated Section 1681g(a)(2) by not disclosing on Plaintiff's credit report the third party entity which provided Defendant with information about the tax lien.

that section of the [FCRA] should not receive a free pass because the issue has never been decided.").

Here, Plaintiff specifically identifies a practice that allegedly violates FCRA rules: Defendant utilizes third parties to obtain public records information but does not disclose its sources of the information in responding to a consumer's request for their credit report. (Compl. ¶ 1.) The Complaint then goes on to identify conduct which could violate Section 1681g(a)(2) with respect to Plaintiff specifically: erroneous information about Plaintiff's tax lien, supplied by a third party, appeared on Plaintiff's credit report but was attributed to a different entity as the source even though Section 1681g(a)(2) mandates the disclosure of "sources." (Compl. ¶¶ 18–26.) In short, such allegations satisfy the Twombly/Iqbal standards for pleading a willful violation of § 1681g(a)(2) of the Fair Credit Reporting Act. The facts alleged in the Complaint clearly allow this Court to infer the plausibility of a claim that Defendant willfully failed to include all of its sources of the information about Plaintiff's tax lien on Plaintiff's credit report. Defendant's decision, either intentionally or recklessly, to omit the third party as its source on Plaintiff's credit report and instead list the Albany County Clerk as its source could, under Section 1681g(a)(2)'s plain language, be an objectively unreasonable interpretation. While Plaintiff may not ultimately be able to prove that Defendant acted either knowingly or recklessly, thereby constituting a willful violation of Section 1681g(a)(2), the Court remains mindful of the fundamental tenet that a plaintiff, having set forth a legally and factually viable cause of action, is entitled to the benefit of discovery before being put to his or her proofs. Accordingly, Defendant's Motion to Dismiss Count One of the Complaint is denied on this ground as well.

## IV.     CONCLUSION

For all of the foregoing reasons, the Court finds that Plaintiff has set forth a viable claim for willful violation of section 1681g(a)(2).  As such, Defendant's Motion to Dismiss Count One of Plaintiff's Complaint will be denied and Defendant shall be required to file an Answer to the Complaint within twenty days.

An appropriate Order follows.